ACCEPTED
12-15-00087-CV
TWELFTH COURT OF APPEALS
TYLER, TEXAS
6/8/2015 7:36:11 PM
CATHY LUSK
CLERK

CASE NO. 12-15-00087-CV

IN THE

TWELFTH COURT OF APPEALS

at Tyler

FILED IN
12th COURT OF APPEALS
TYLER, TEXAS
6/8/2015 7:36:11 PM
CATHY S. LUSK
Clerk

_____

EXCO OPERATING COMPANY, LP
Appellant,

V.

MARY K. MCGEE
Appellee.

_____

Appeal from Cause No. 369-09
115th District Court, Upshur County, Texas
Honorable Lauren Parish Presiding

_____

BRIEF OF APPELLANT EXCO OPERATING COMPANY, LP

JENNIFER PARKER AINSWORTH
Texas Bar No. 00784720
E-mail: jainsworth@wilsonlawfirm.com
MATTHEW T. MILAM
Texas Bar No. 24065746
E-mail: mmilam@wilsonlawfirm.com
WILSON, ROBERTSON & CORNELIUS, P.C.
One American Center
909 ESE Loop 323, Suite 400 [01]
P.O. Box 7339
Tyler, Texas 75711-7339
Telephone: 903/509-5000
Telecopier: 903/509-5091

ATTORNEYS FOR APPELLANT
EXCO OPERATING COMPANY, LP

**ORAL ARGUMENT REQUESTED**

## IDENTITY OF PARTIES AND COUNSEL

1.  EXCO Operating Company, LP, Appellant

    Counsel for Appellant:　　　JENNIFER PARKER AINSWORTH
    　　　　　　　　　　　　　　Texas Bar No. 00784720
    　　　　　　　　　　　　　　E-mail: jainsworth@wilsonlawfirm.com
    　　　　　　　　　　　　　　MATTHEW T. MILAM
    　　　　　　　　　　　　　　Texas Bar No. 24065746
    　　　　　　　　　　　　　　E-mail: mmilam@wilsonlawfirm.com
    　　　　　　　　　　　　　　WILSON, ROBERTSON & CORNELIUS, P.C.
    　　　　　　　　　　　　　　One American Center
    　　　　　　　　　　　　　　909 ESE Loop 323, Suite 400 [01]
    　　　　　　　　　　　　　　P.O. Box 7339
    　　　　　　　　　　　　　　Tyler, Texas 75711-7339
    　　　　　　　　　　　　　　Telephone:  903/509-5000
    　　　　　　　　　　　　　　Telecopier:  903/509-5091

2.  Mary K. McGee, Appellee

    Counsel for Appellee:　　　JOHN D. SLOAN, JR.
    　　　　　　　　　　　　　　Texas Bar No. 18505100
    　　　　　　　　　　　　　　E-mail:  jsloan@sloanlaw.com
    　　　　　　　　　　　　　　J. RYAN FOWLER
    　　　　　　　　　　　　　　Texas Bar No. 24058357
    　　　　　　　　　　　　　　E-mail: rfowler@sloanfirm.com
    　　　　　　　　　　　　　　Sloan, Bagley, Hatcher & Perry Law Firm
    　　　　　　　　　　　　　　101 East Whaley Street
    　　　　　　　　　　　　　　P.O. Drawer 2909
    　　　　　　　　　　　　　　Longview, Texas 75606
    　　　　　　　　　　　　　　Telephone:  903-757-7000
    　　　　　　　　　　　　　　Telecopier:  903-757-7574

3.  Presiding Judge:　　　　　The Honorable Lauren Parish
    　　　　　　　　　　　　　　115th District Court, Upshur County, Texas

i

# **TABLE OF CONTENTS**

IDENTITY OF PARTIES AND COUNSEL ...........................................................i

TABLE OF CONTENTS................................................................................ ii

INDEX OF AUTHORITIES........................................................................... iii

TERMINOLOGY .........................................................................................v

STATEMENT OF THE CASE.........................................................................vi

STATEMENT REGARDING ORAL ARGUMENT ........................................... viii

ISSUES PRESENTED FOR REVIEW ..............................................................ix

STATEMENT OF FACTS ..............................................................................1

STANDARD OF REVIEW ..............................................................................7

SUMMARY OF THE ARGUMENT ..................................................................8

ARGUMENT AND AUTHORITIES.................................................................10

PRAYER ...................................................................................................26

CERTIFICATE OF SERVICE ........................................................................27

CERTIFICATE OF COMPLIANCE.................................................................28

TABLE OF CONTENTS TO APPELLANT'S APPENDIX ...................................29

# INDEX OF AUTHORITIES

CASES                                                                                    PAGE(S)

*Arthur Anderson & Co. v. Perry Equip. Corp.*,
 945 S.W.2d 812 (Tex. 1997) .......................................................................18, 23

*Bocquet v. Herring*, 972 S.W.2d 19 (Tex. 1998)................................................8, 16

*Divin v. Tres Lagos Prop. Owners' Ass'n,*
2014 Tex. App. LEXIS 8587 at *7
(Tex. App.—Texarkana Aug. 7, 2014)....................................................................17

*Findlay v. Cave*, 611 S.W.2d. 57 (Tex. 1981) ......................................................11, 13

*Huff v. Fidelity Un. Life. Ins.*, 312 S.W.2d 493 (Tex. 1958) .................................10

*Jones v. Kelley*, 614 S.W.2d 95 (Tex. 1981) ........................................................10, 15

*Llanes v. Davila*, 133 S.W.3d 635
 (Tex. App. – Corpus Christi 2003, pet denied) ..............................................10

*Musgrave v. Brookhaven Lake Prop. Owners Ass'n*, 990 S.W.2d 386
 (Tex. App.–Texarkana 1999, pet. denied).......................................................25

*Owen Elec. Supply, Inc. v. Brite Day Constr., Inc.*,
 821 S.W.2d 283
 (Tex. App. Houston [1st Dist.] 1991, writ denied)........................................16

*Oyster Creek Fin. Corp. v. Richwood Invs. II, Inc.*,
 176 S.W.3d 307 (Tex. App.–Houston
[1st Dist.] 2004, pet. denied) ..........................................................................7

*Powell Elec. Systems, Inc. v. Hewlett Packard Co.*,
 356 S.W.3d 113
 (Tex. App. – Houston [1st Dist.] 2011, no pet.)............................................16

*Reeder v. Wood County Energy L.L.C.*, 320 S.W.3d 433
(Tex. App.--Tyler 2010) *rev'd on other grounds*,
395 S.W.3d 789 (Tex. 2012) ...............................................................8, 16

*Sabine Offshore Service, Inc., v. Port Arthur,* 595 S.W.2d 840 (Tex. 1971)..........17

*Smith v. Patrick W. Y. Tam Trust*, 296 S.W.3d 545 (Tex. 2009).................19, 20, 25

*Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1 (Tex. 1991) ..............................16

*Tex. State Teachers Ass'n v. Garland Ind. Sch. Dist.*,
489 U.S. 782, 793 (1989) ......................................................................19

*Transportation Ins. v. Moriel*, 879 S.W.2d 10 (Tex. 1994)......................................8

*Thomas v. Bobby D. Assocs.*, 2008 LEXIS 5881
(Tex. App.--Tyler 2008, no pet.) ..................... 7, 8, 16, 17, 18, 22, 23, 24, 25

*Wayne v. A.V.A Vending, Inc.*, 52 S.W.3d 412
(Tex. App.–Corpus Christi 2001, pet denied)....................................11, 13, 14

*Warrior Constructors, Inc.*, *v. Small Bus. Inv. Co. of Houston*,
536 S.W. 2d 382
(Tex. App. – Houston [14th Dist.] 1976, no writ)..................................13, 14

*USAA Cty. Mut. Ins. Co. v. Cook*, 241 S.W.3d 93
(Tex. App.–Houston 2007, no pet)...............................................................25

TEXAS STATUTES                                                        PAGE(S)

TEX. CIV. PRAC. & REM. CODE 38.001(8) ................................................................10

TEX. CIV. PRAC. & REM. CODE 38.002................................................................10

TEXAS RULES                                                            PAGE(S)

TEX. DISCIPLINARY R. PROF. CONDUCT 1.04, reprinted in
TEX. GOV'T CODE ANN. tit. 2, subtit. G
app (State Bar Rules, art. X, § 9)..............................................................18

# TERMINOLOGY

| | |
|---|---|
| "EXCO" or "Appellant" | Appellant/Defendant, EXCO Operating Company, LP |
| "McGee" or "Appellee" | Appellee/Plaintiff, Mary K. McGee |
| "Judge Parish" | Honorable Lauren Parish, 115TH Judicial District Court, Upshur County, Texas |
| The "Lease" | That Oil, Gas and Mineral Lease dated February 21, 1996, originally between Curtis Webb and Wife Mary K. McGee, as lessors, and Amoco Production Company, as lessee. (5 R.R. Pl. Ex. 1) |
| The "Property" | That 93.9 acres of land, more or less, a part of the David Meredith Survey, A-315, being that land subject to the Lease and made the basis of the underlying lawsuit by McGee. |

## STATEMENT OF THE CASE

This appeal arises from an award of attorney's fees by the trial court in an amount approximately ten times the amount of actual damages awarded by a jury. McGee filed the underlying lawsuit in 2009 alleging that EXCO[1] breached an Oil, Gas and Mineral Lease (App. Tab 4) by failing to pay for surface damages related to the drilling of a gas well. Although EXCO offered to pay McGee $16,518.25 prior to any suit being filed and $18,518.25 after suit had been filed, McGee rejected such offers and demanded payment of $90,000.00. (App. Tab 5 and App. Tab 6)

Although McGee demanded $90,000.00 from EXCO prior to trial, at trial she never sought anything close to that amount. Instead she sought $34,156.25, approximately a third of the amount she had demanded. Additionally, the vast majority of the amount McGee sought at trial was for loss of property value, a measure of damages which the language of the Lease did not explicitly authorize. At trial, the jury awarded only $4,108.25 for timber costs. (App. Tab. 3) Such amount was based on a timber estimate provided by EXCO to McGee, which EXCO had used in making its pre-trial offers of settlement.

---

[1] McGee's lawsuit was filed against TXOK Texas Energy Resources, LP, TXOK Texas Energy Holdings, LLC, and EXCO Operating Company, LP. The aforementioned TXOK entities were merged into EXCO Operating Company, LP. Accordingly, references in the Record to either of the aforementioned TXOK entities should be treated as references to EXCO.

The jury awarded less than five percent of what McGee had demanded prior to trial and approximately one-eighth of what she sought at trial. McGee could have recovered four times more than she did at trial had she accepted EXCO's pre-suit offer or pre-trial offers. Despite recovering only a fraction of the damages she had sought and far less than what EXCO had offered, she requested $39,773.75 in attorney's fees from EXCO, almost ten times the amount of damages awarded by the jury. Nevertheless, the trial court awarded the full amount of attorney's fees sought by McGee. (App. Tab 1)

The trial court erred in awarding McGee attorney's fees because her pre-trial demands of $90,000.00, an amount over twenty times the amount the jury awarded, were excessive. Furthermore, even if this Court believed McGee was entitled to some award of attorney's fees, the trial court's award of an amount nearly ten times more than the actual damages awarded by the jury was not reasonable and necessary.

## STATEMENT REGARDING ORAL ARGUMENT

EXCO asks this court to grant oral argument in this matter because full discussion of the case would materially aid in this Court's decision-making process.

# ISSUES PRESENTED

1.     In light of McGee's principal recovery of $4,108.25 in actual damages, were McGee's pre-trial demands on EXCO of $90,000.00 excessive, such that the trial court erred in awarding her attorney's fees?

2.     Even if McGee is entitled to recover some amount of attorney's fees, was the award of attorney's fees by the trial court of $39,773.75, an amount almost ten times that of actual damages, reasonable and necessary?

CASE NO. 12-15-00087-CV

IN THE

TWELFTH COURT OF APPEALS

at Tyler

_____

EXCO OPERATING COMPANY, LP

Appellant,

V.

MARY K. MCGEE

Appellee.

_____

Appeal from Cause No. 369-09
115th District Court, Upshur County, Texas

Honorable Lauren Parish Presiding

_____

BRIEF OF APPELLANT EXCO OPERATING COMPANY, LP

_____

## I. **STATEMENT OF FACTS**

This appeal arises from an award of attorney's fees to Appellee Mary K.

McGee ("McGee") in a suit involving an Oil, Gas and Mineral Lease. On or about

July 11, 1996 McGee executed an Oil, Gas and Mineral Lease (the "Lease") (App.

Tab 4) which covered approximately 93.9 acres of land acres in Upshur County,

Texas (the "Property"). (3 R.R. 92-93; 5 R.R. Pl.'s Ex. 1). Attached as part of the

1

Lease was an exhibit with two unique provisions, Paragraphs 13 and 14. Paragraph 13 of the Lease provided that only the southeast 33.2 acres could be used for conducting surface drilling operations. (App. Tab 4). Paragraph 14 of the Lease provided that lessee was to pay McGee for certain damages caused by any operations, including damages to "houses, buildings, fences, wells, roads and other improvements, cattle and other livestock, growing crops, trees and grasses." (App. Tab 4). Although EXCO was not the original lessee, there is no dispute that at all times relevant to this matter EXCO was the lessee under the terms of the Lease.

In 2006, representatives of EXCO began attempts to notify McGee of its intent to drill a gas well on the Property. (3 R.R. 160-161). Brett McKinney of RWT Land Services first attempted to contact McGee by telephone. (3 R.R. 160-161). He left a few messages at McGee's office, but did not receive a response. (3 R.R. 161). Merl Muse, another landman at RWT Land Services, also attempted to contact McGee by phone and by going to her office. (3 R.R. 161).

In or about November of 2006, EXCO formally notified McGee in writing of its intent to drill a gas well on the Property. (5 R.R. Def.'s Ex. 5). In that same notice, EXCO offered to pay $5,000 for initial surface damages. (5 R.R. Def.'s Ex. 5). EXCO further stated that road and pipeline rights-of-way could be discussed at a later time after surveys and well staking had been completed. (5 R.R. Def.'s Ex. 5).

2

Following its formal written notice to McGee of its intent to drill, EXCO drilled a gas well on the Property in or about late 2006 or early 2007. (3 R.R. 66). The gas well was drilled on the southeast 33.2 acres of the Property, as required by Paragraph 13 of the Lease. (App. Tab 4). Subsequent to the drilling of the well, Mr. McKinney spoke with Kenneth Freeman[2] regarding compensation for surface disturbances related to the drilling of the well. (3 R.R. 174). Mr. McKinney then followed up with a letter to McGee offering her compensation related to the drilling of the well. (3 R.R. 174; 5 R.R. Def. Ex. 6). The total compensation offered to McGee was $16,518.25. (5 R.R. Def. Ex. 6). That amount included the $5,000.00 for location damages that had previously been offered, along with $3,895.00 for a pipeline right of way, $3,515.00 for a road right of way, and $4,108.25 for lost timber. (3 R.R. 174-177; 5 R.R. Def. Ex. 6). The amount offered for lost timber was based on a timber appraisal that EXCO obtained and forwarded to McGee along with its offer of compensation. (3 R.R. 175-177).

Unwilling to accept EXCO's offer, on or about June 24, 2009, McGee filed her Original Petition and Request for Disclosure ("Original Petition"). (C.R. 6-14). In her Original Petition, McGee alleged that EXCO breached the Lease by failing to pay for damages caused by its drilling operations. (C.R. 8). EXCO filed its

---

[2] Kenneth Freeman is McGee's significant other and was authorized by McGee to speak with EXCO and EXCO representatives regarding issues related to the drilling of the gas well. (3 R.R. 95-96)

3

Original Answer on or about July 21, 2009. (C.R. 15-17). McGee filed her First Amended Petition on or about January 4, 2012, which contained substantially the same allegations. (C.R. 23-27).

Subsequent to filing suit, on January 23, 2012, McGee demanded by letter that EXCO pay her $90,000.00 to resolve the claims asserted by her. (App. Tab 5). McGee alleged in that letter that an offer by EXCO of $18,518.25 did not "fully [compensate] her for her losses, including but not limited to damages caused by destruction of grass, trees, land by pits and excavations dug, and change of drill location on land which [McGee] intended to build upon." (App. Tab 5). McGee sent a second demand for $90,000.00 to EXCO on or about April 10, 2013. (App. Tab 6). McGee's second letter again referenced damages caused by destruction of grass, trees, land by pits and excavations dug, and change of drill location on which McGee intended to build. (App. Tab 6). EXCO filed its First Amended Answer on or about December 2, 2013, including the additional affirmative defense that Plaintiff was not entitled to attorney's fees due to her excessive demand of $90,000.00. (C.R. 42-43).

On February 13, 2014, a jury trial began in 115TH Judicial District Court of Upshur County, Texas. (3 R.R. 1). At trial, McGee sought $30,048 as compensation for alleged loss of property value, along with $4,108.25 for costs of timber removed from the Property. (4 R.R. 67-68). The jury awarded $4,108.25 in

4

timber costs to McGee, but did not award any amount for loss of property value. (App. Tab 3).

By agreement of the parties, the issues of McGee's entitlement to attorney's fees and the amount of attorney's fees, if any, were to be submitted to the trial court. (4 R.R. 89-92). On February 18, 2014, McGee sent a letter to EXCO with affidavits and time records purporting to evidence attorney's fees of $39,773.75.[3] In response to McGee's affidavits and time records, EXCO filed its Response to Plaintiff's Request for Attorneys' Fees, asserting both that Plaintiff was barred from recovering attorney's fees because her demands of $90,000.00 from EXCO had been excessive or unreasonable and that, alternatively, the amount of attorney's fees sought by Plaintiff was neither reasonable nor necessary (C.R. 215-222). An affidavit controverting Plaintiffs' claimed attorney's fees was included as part of EXCO's filing. (C.R. 227-230). McGee subsequently filed a reply to EXCO's response on attorney's fees. (C.R. 231-238).

On April 21, 2014, Judge Parish signed an Order on Plaintiff's Attorneys' Fees awarding McGee her requested $39,773.75 in fees. (C.R. 239). Contemporaneously, she sent the parties a letter stating that she was granting McGee's request for attorney's fees and that she did not and could not find that

---

[3] EXCO acknowledges receipt of the aforementioned letter, affidavits and time records. Further, the aforementioned letter purported to copy Judge Parish by facsimile. However, these documents do not appear in the Clerk's Record and EXCO is not aware of any file-marked copy.

McGee's attorneys acted unreasonably or in bad faith in their initial demand of $90,000.00. (C.R. 240).

On June 6, 2014 the trial court entered its findings of fact and conclusions of Law. (App. Tab 2). These included findings of fact and conclusions of law that McGee demanded payment of $90,000.00 from EXCO on two occasions, that McGee did not act unreasonably or in bad faith in her demand of $90,000.00, and that the attorney's fees sought by McGee were reasonable and necessary. (App. Tab 2).

On January 7, 2015 the trial court signed a Final Judgment awarding McGee $4,108.25 in actual damages for lost timber and $39,773.75 in attorney's fees. (App. Tab 1). On February 6, 2015 EXCO filed a Motion for New Trial on the issues of whether McGee's demands on EXCO were excessive or unreasonable and the amount of reasonable and necessary attorney's fees, if any, for McGee's attorneys. (C.R. 263-269). The trial court entered no order as to EXCO's Motion for New Trial, and, accordingly, it was overruled by operation of law. On April 6, 2015, EXCO filed its Notice of Appeal of the Final Judgment. (C.R. 270-271).

## II. <u>STANDARD OF REVIEW</u>

### A. <u>Excessive Demand</u>

An excessive demand finding is reviewed under a sufficiency of the evidence standard. *See Oyster Creek Fin. Corp. v. Richwood Invs. II, Inc.*, 176 S.W.3d 307, 317-18 (Tex. App.–Houston [1st Dist.] 2004, pet. denied). Where a party attacks the legal and factual sufficiency of an adverse finding on which he has the burden of proof, he must demonstrate that the evidence conclusively establishes, as a matter of law, all facts in support of the issue, or alternatively, that the adverse finding is against the great weight and preponderance of the evidence. *Id.* at 318. In reviewing a claim that the evidence conclusively establishes liability as a matter of law, the reviewing court considers evidence and inferences supporting the finding and ignores all evidence and inferences to the contrary. *Id.* In reviewing a claim that the finding is against the great weight and preponderance of the evidence, the reviewing court considers and weighs all of the evidence, and may set aside the finding only if it is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Id.*

### B. <u>Reasonableness and Necessity of Attorney's Fees Award</u>

An attorney fee award is also reviewed for excessiveness under a sufficiency of the evidence standard. *Thomas v. Bobby D. Assocs.,* 2008 LEXIS 5881, *3 (Tex. App.–Tyler 2008, no pet). When the complaint is that the award of

7

attorney's fees is excessive, factual insufficiency to support the award also constitutes an abuse of discretion by the court. *Reeder v. Wood County Energy L.L.C.*, 320 S.W.3d 433, 452 (Tex. App.--Tyler 2010) *rev'd on other grounds*, 395 S.W.3d 789 (Tex. 2012), citing *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998).

## C. Remittitur

The standard the court of appeals applies to review an issue of remittitur is the factual sufficiency of the evidence. *Transportation Ins. v. Moriel*, 879 S.W.2d 10, 30 (Tex. 1994). The court of appeals applies the same standard when it reviews a trial court's suggestion of remittitur as when it reviews a request for remittitur made on appeal. *Id.* Where error only affects the amount of attorney's fees awarded, the issue of attorney's fees is severable. *Thomas v. Bobby D. Assocs.,* 2008 LEXIS 5881, *13 (Tex. App.–Tyler 2008, no pet).

## III. SUMMARY OF THE ARGUMENT

### A. McGee is not entitled to attorney's fees because her demands of $90,000.00 were excessive.

The trial court erred in awarding McGee attorney's fees because her demands of $90,000.00 on EXCO were excessive. McGee acted unreasonably in making demands for compensation to which she was not entitled under the terms of the Lease. Furthermore, she made such demands without any estimate as to

8

what her damages actually were. Accordingly, the evidence conclusively established as a matter of law that McGee acted unreasonably in making such demands. Alternatively, the trial court's finding that McGee did not act unreasonably in making such demands is against the great weight and preponderance of the evidence.

## B. <u>The amount of attorney's fees awarded by the trial court was neither reasonable nor necessary.</u>

The trial court erred in awarding McGee attorney's fees in an amount almost *ten times* greater than actual damages. McGee had little success at trial, recovering less than one-eighth of what she attempted to recover at trial and less than five percent of what she had demanded prior to trial. Additionally, this was a relatively simple breach of contract case with a very limited procedural history that took only a little over a single day to try. Thus, there was no evidence that the attorney's fees sought by McGee were reasonable and necessary. Alternatively, there is insufficient evidence to support the trial court's finding of $39,773.75 in reasonable and necessary attorney's fees.

## C. <u>Remittitur.</u>

Alternatively, in the event this Court does not bar the recovery of attorney's fees due to McGee's excessive demands, this Court should suggest a remittitur as to attorney's fees.

# IV. ARGUMENT AND AUTHORITIES

## A. McGee is not entitled to attorney's fees because her demands of $90,000.00 were excessive.

### 1. To recover attorney's fees under the general attorney's fees statute, a party must present its claim to the opposing party.

A prevailing party in a suit for breach of contract may recover its attorney's fees. TEX. CIV. PRAC. & REM. CODE 38.001(8). In order to recover attorney's fees under the general attorney's fees statute a party must be represented by an attorney, must have presented the claim to the opposing party, and the opposing party must have failed to tender payment of the "just amount owed" within 30 days of being presented with the claim. TEX. CIV. PRAC. & REM. CODE § 38.002. "Present" is simply defined as a demand or request for payment. *Llanes v. Davila*, 133 S.W.3d 635, 641 (Tex. App.–Corpus Christi 2003, pet denied). The purpose of presentment is to give the defendant a chance to pay the claim before becoming obligated for the plaintiff's attorney's fees. *Jones v. Kelley*, 614 S.W.2d 95, 100 (Tex. 1981). The act of filing suit is not by itself a demand within the terms of the statute. *Huff v. Fidelity Un. Life Ins.*, 312 S.W.2d 493, 500 (Tex. 1958); *Llanes v. Davila*, 133 S.W.3d at 641.

### 2. A party who makes an excessive demand on another party is not entitled to attorney's fees.

Although generally a prevailing party in a breach of contract action is entitled to attorney's fees, there is an exception for instances in which the

10

prevailing party makes an excessive demand on the opposing party. A creditor who makes an excessive demand of a debtor is not entitled to attorney's fees for the litigation required to recover the debt. *Findlay v. Cave*, 611 S.W.2d. 57, 58 (Tex. 1981). The dispositive inquiry for determining whether a demand is excessive is whether the claimant acted unreasonably or in bad faith. *Wayne v. A.V.A Vending, Inc.*, 52 S.W.3d 412, 418 (Tex. App.–Corpus Christi 2001, pet denied), citing *Findlay v. Cave*, 611 S.W.2d. at 58. If a claimant demands monies to which he is not entitled, that demand is unreasonable and consequently excessive. *Wayne v. A.V.A Vending, Inc.*, 52 S.W.3d at 418. A judgment for less than the amount demanded is some evidence of excessiveness, but a demand is not necessarily excessive simply because it is greater than what the jury determined was actually due. *Findlay v. Cave*, 611 S.W.2d. at 58.

### 3. **McGee acted unreasonably because she demanded monies to which she was not entitled.**

Where a claimant demands monies to which he is not entitled, that demand is unreasonable and consequently excessive. *Wayne v. A.V.A Vending, Inc.*, 52 S.W.3d at 418. For example, in *Wayne*, the appellate court affirmed a trial court's finding that the plaintiff had made an excessive demand because the plaintiff had demanded double holdover rent and common area charges, which were amounts to which he was not entitled. *Id.* at 418-19. Likewise, in this case McGee demanded monies to which she was not entitled, and therefore her demand was excessive.

11

### i.    McGee unreasonably demanded compensation due to the location of the well.

McGee's demands included seeking compensation for losses related to a purported "change of drill location on land which [McGee] intended to build upon." There are at least two problems with McGee's demand. First, the Lease expressly authorized EXCO to drill at the location at which it did, such location being on the southeast 33.2 acres of the Property. (App. Tab 4). This was the specific portion of the Property that McGee had picked for possible drilling when she executed the Lease. (3 R.R. 100-101). At trial, McGee admitted that EXCO drilled on the proper portion of the Property and did not violate the Lease in doing so. (3 R.R. 100). Thus, by the terms of the Lease and McGee's own admission, the location of the well did not constitute a breach of the Lease that would permit her to recover damages.

The second problem with McGee's demand for compensation related to the location of the well is that the terms of the Lease do not provide for any such recovery. The Lease set forth certain damages which she could recover related to EXCO's operations, which included "all damages...to houses, buildings, fences, wells, roads and other improvements, cattle and other livestock, growing crops, trees and grasses." (App. Tab 4). Accordingly, there is no provision that entitles her to compensation due to the location of EXCO's well.

### ii. McGee unreasonably demanded an amount almost three times more than what she sought at trial.

At trial McGee sought to recover little more than one-third of the amount that she had demanded from EXCO prior to trial. Rather than attempting to recover the $90,000.00 she had demanded, or any amount close to $90,000.00, she instead sought a greatly reduced amount of $34,156.25 in damages, which included $30,048.00 for an alleged loss of property value and $4,108.25 for timber costs. (4 R.R. 67-68). Given the vast disparity between the amount McGee demanded from EXCO prior to trial and the amount that she attempted to recover at trial, it is apparent that even McGee realized that she was not entitled to the amounts she had demanded.

### iii. McGee's demands far exceed the amount to which the jury found she was entitled.

Although a demand is not necessarily excessive simply because it is greater than what a jury determines is due, it can be evidence of excessiveness. *Findlay v. Cave*, 611 S.W.2d. at 58. For example, in *Warrior Constructors, Inc., v. Small Bus. Inv. Co. of Houston*, 536 S.W. 2d 382, 386 (Tex. App. – Houston [14th Dist.] 1976, no writ), a demand of effectively $35,000.00 was found to be excessive where the defendant was only liable for $25,000.00. Likewise, in *Wayne v. A.V.A Vending, Inc.*, 52 S.W.3d 412, 418-419 (Tex. App.–Corpus Christi 2001, pet denied)

13

demands of $37,000.00 and $43,000.00 were found to be excessive when the actual recovery was only $4,265.00.

McGee's demands were not merely greater than the amount the jury determined she was entitled to, they were over *twenty times* greater than the $4,108.25 that the jury awarded her. This disparity between McGee's demands and her actual recovery is far greater than the disparities in both *Wayne* and *Warrior Constructors, Inc.*, which both included findings of excessive demands.

### 4. McGee acted unreasonably by making demands on EXCO without any basis to support the amount demanded.

McGee's demands were further unreasonable and excessive because she had no basis for the amount she demanded. Her two demands to EXCO of $90,000.00 were made on January 23, 2012, and April 10, 2013. (App. Tab 5 and App. Tab 6). Following those demands, on June 28, 2013, EXCO took McGee's deposition. (C.R. 32). In her deposition, taken over four years after she filed her lawsuit, McGee admitted that she did not have an estimate as to what her damages were:

41

Q Okay. And I don't want to get into anything that
you've discussed with your attorney, so you don't
have to tell me anything that you've discussed with
him but do you have any ballpark estimate of what
your damages are?
A Not at this time.

14

Q  Okay.  So you can't say whether this $16,518.25

42

total on Exhibit No. 2 would be a fair amount of compensation or not?

A  It appears to be grossly low.

Q  Okay.  And what do you base that on?

A  The property value and the timber amount.

Q  Okay.  You believe you're entitled to more than $4,108.25 for the lost timber?

A  Yes.

(*See* C.R. 225-26)

This is not simply an example of initial uncertainty at the outset of a case regarding a proper amount of unliquidated damages.  Years into this litigation and following multiple demands on EXCO, McGee still did not have an estimate of her damages.  Such delay and baseless demands frustrate the entire purpose for requiring presentment of a claim or demand.  See *Jones v. Kelley*, 614 S.W.2d 95, 100 (Tex. 1981) (The purpose of presentment is to give the defendant a chance to pay the claim before becoming obligated for the plaintiff's attorney's fees.).

15

**B. The amount of attorney's fees awarded by the trial court was neither reasonable nor necessary.**

Even if McGee is entitled to some amount of attorney's fees, there is no evidence and/or factually insufficient evidence[4] to support the Court's award of attorney's fees to Plaintiff in the amount of $39,773.75 and its findings that such attorney's fees were reasonable and necessary. Accordingly, the amount of attorney's fees awarded is excessive.

### 1. Attorney's fees must be reasonable and necessary.

Any award of attorney's fees must be supported by evidence that the fees are both reasonable and necessary. *Powell Elec. Systems, Inc. v. Hewlett Packard Co.*, 356 S.W.3d 113, 127-28 (Tex. App.–Houston [1st Dist.] 2011, no pet.), citing *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 10 (Tex. 1991), modified on other grounds by *Tony Gullo I, L.P. v. Chapa*, 212 S.W.3d 299, 313-14 (Tex. 2006). The amount of an award of attorney's fees rests in the sound discretion of the trial court. *Owen Elec. Supply, Inc. v. Brite Day Constr., Inc.*, 821 S.W.2d 283, 288 (Tex. App.–Houston [1st Dist.] 1991, writ denied). However, as this Court has noted, an appellate court has the duty to reduce the fee awarded if it is excessive.

---

[4] Factual insufficiency to support an award of attorney's fees also constitutes an abuse of discretion by the court. *Reeder v. Wood County Energy L.L.C.*, 320 S.W.3d 433, 452 (Tex. App.--Tyler 2010) *rev'd on other grounds*, 395 S.W.3d 789 (Tex. 2012), citing *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998).

*Thomas v. Bobby D. Assocs.*, 2008 LEXIS 5881, *12 (Tex. App.–Tyler 2008, no pet.).

## 2. **There is no evidence of attorneys' fees in the record.**

As an initial matter, EXCO reiterates that the attorney's fees affidavits and time records sent to EXCO by McGee do not appear in the Clerk's Record and may not have been filed in the trial court below. Appellate courts cannot consider affidavits outside the record. *Sabine Offshore Service, Inc. v. Port Arthur,* 595 S.W.2d 840, 841 (Tex. 1979). An appellate court is to base its decisions on the record as provided in each case, not on the record that should or could have been made. *Divin v. Tres Lagos Prop. Owners' Ass'n,* 2014 Tex. App. LEXIS 8587 at *7 (Tex. App.—Texarkana Aug. 7, 2014). Accordingly, the aforementioned affidavits and time records cannot be considered as evidence of attorney's fees. Without such documents, McGee has no evidence or, alternatively, insufficient evidence of attorney's fees. McGee's award of attorneys' fees should be reversed and judgment rendered that McGee recover no attorneys' fees.

Alternatively, in the event the court treats such documents as a part of the record, EXCO sets forth its additional arguments.

## 3. **There are multiple factors to consider in determining the reasonableness and necessity of attorney's fees.**

There is no one single factor that is dispositive as to the reasonableness and necessity of an award of attorney's fees. In determining whether the award is

excessive, the reviewing court is entitled to look at the entire record and to view the matter in the light of the testimony, the record before them, the amount in controversy, and their own common knowledge and experience as lawyers and judges. *Thomas v. Bobby D. Assocs.*, 2008 LEXIS 5881 at *12-13. In *Arthur Anderson & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997) (quoting TEX. DISCIPLINARY R. PROF. CONDUCT 1.04, reprinted in TEX. GOV'T CODE ANN. tit. 2, subtit. G app (State Bar Rules, art. X, § 9), the Texas Supreme Court set forth certain factors to be weighed in determining the reasonableness and necessity of attorney's fees, which include:

a. the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly;

b. the likelihood . . . that the acceptance of the particular employment will preclude other employment by the lawyer;

c. the fee customarily charged in the locality for similar legal services;

d. the amount involved and the results obtained;

e. the time limitations imposed by the client or by the circumstances;

f. the nature and length of the professional relationship with the client;

g. the experience, reputation, and ability of the lawyer or lawyers performing the services; and

h. whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

**4. <u>The most critical factor in determining the reasonableness of a fee award is the degree of success obtained.</u>**

Although multiple factors are weighed to determine the reasonableness of a fee award, the "most critical factor" in determining the reasonableness of a fee award "is the degree of success obtained." *Smith v. Patrick W.Y. Tam Trust*, 296 S.W.3d 545, 548 (Tex. 2009) (quoting *Tex. State Teachers Ass'n v. Garland Ind. Sch. Dist.*, 489 U.S. 782, 793 (1989)). For example, in *Smith* the jury awarded $65,000 in damages. *Smith v. Patrick W.Y. Tam Trust*, 296 S.W.3d at 546. Plaintiff sought $47,438.75 in attorney's fees, which was ultimately awarded by the Court of Appeals. *Id.* at 546-47. However, the Texas Supreme Court, noting that Plaintiff had sought $215,000 in damages but only recovered $65,000, ruled that the fees of $47,438.75 awarded were unreasonable in light of the amount involved and the results obtained. *Id.* at 548. Thus, the fee award, which was 72.98% of the damages recovered, was found to be unreasonable as a matter of law.

**5. <u>The factors set forth by the Texas Supreme Court do not support the amount of attorney's fees awarded to McGee</u>**

The factors set forth by the Texas Supreme Court weigh heavily against the amount of fees awarded to McGee. First, as noted above, the "most critical factor"

in determining the reasonableness of a fee award "is the degree of success obtained." *Smith v. Patrick W.Y. Tam Trust*, 296 S.W.3d at 548. McGee recovered only a small fraction of the amount she sought. McGee demanded $90,000.00 prior to trial. (C.R. 223 and 224). McGee sought $34,156.25 in damages at trial. (4 R.R. 67-68). Ultimately, however, she only recovered $4,108.25 in damages, or less than five percent of what she had demanded and less than one-eighth of what she sought at trial. (App. Tab 3). McGee would've recovered four times as much had she simply accepted EXCO's pre-suit offer of $16,518.25. (5 R.R. Def. Ex. 6).

Second, the issues involved in this case were neither complex nor novel. The only cause of action asserted in this case was for breach of a single oil, gas, and mineral lease. (C.R. 23-27). In that regard, the sole issue at trial was a single paragraph of the Lease. (C.R. 25). There were no counterclaims filed in this suit. (C.R. 42-43). The sole affirmative defense at issue was whether the demand made on EXCO by McGee was excessive.[5] (C.R. 42-43). The trial in this case lasted only a little over a single day, beginning at approximately noon on February 13, 2014 with opening statements (3 R.R. 6, 11) and ending with the verdict being read at approximately 12:30 p.m. the next day. (4 R.R. 1, 87).

---

[5] Although EXCO pleaded a statute of limitations defense, this issue was neither presented nor argued to either the jury or the trial court.

Third, this case should not have prevented any further employment by McGee's counsel. The Plaintiff took no depositions in the case and there were no hearings in the case before the pretrial hearing. (C.R. 229). Further, the affidavits and billing records sent to EXCO pertaining to attorney's fees indicated multiple periods of months in which no work was performed, including (C.R. 229):

a. October 14, 2008 to January 13, 2009 – **Approximately 3 months**;

b. January 13, 2009 to May 6, 2009 – **Approximately 4 months**;

c. August 17, 2009 to November 12, 2009 – **Approximately 3 months**;

d. December 22, 2009 to August 16, 2010 – **Approximately 8 months**;

e. August 31, 2010 to January 3, 2011 – **Approximately 4 months**;

f. January 3, 2011 to April 5, 2011 – **Approximately 3 months**;

g. May 11, 2011 to September 19, 2011 – **Approximately 4 months**;

h. January 28, 2012 to May 11, 2012 – **Approximately 3 months**; and

i. May 11, 2012 to February 4, 2013 – **Approximately 9 months**.

Thus, during the 4.5 years that this case was pending, there was no work performed in 41 months, or 3.4 years of that time.

Fourth, the hourly fees charged by McGee's attorneys of $450.00 and $300.00 are not customary or reasonable in East Texas for a case with an amount in controversy of less than $35,000.00. Jennifer Ainsworth, attorney for EXCO and a shareholder at Wilson, Robertson & Cornelius, P.C., charged an hourly rate

21

of $200.00 while associate attorneys who worked on this matter charged an hourly rate of $150.00.  (C.R. 229-230).

Fifth, there is no evidence of any time limitations imposed by the client or by the circumstances.  In fact, the record reflects just the opposite, as over 4.5 years elapsed between the time of filing and the time of trial.  (*Compare* C.R 6, filing date of June 24, 2009, *to* 3 R.R. 1, trial on the merits beginning on February 13, 2014).

Lastly, there was no evidence submitted regarding whether this case was taken on a contingency fee basis, nor whether McGee has actually compensated her counsel for any time spent.  (C.R. 230).  Additionally, there was no evidence submitted regarding the nature and length of the professional relationship between McGee and her counsel.

### 6. Precedent from this Court supports a much lower award of attorney's fees.

In *Thomas v. Bobby D. Assocs.*, 2008 LEXIS 5881 (Tex. App.–Tyler, 2008 no pet), this Court reviewed an attorney fee award of $49,000.00 when the amount of damages recovered was only $7,030.00.  *Thomas* involved claims of breach of six contracts for deed. *Id.* at *1.  At trial, the plaintiff recovered $7,030.00 in actual damages and attorney's fees of $49,000.00.  *Id*. at *2.  On appeal, appellant complained that the amount of attorney's fees awarded was grossly disproportionate to the amount of actual damages.

22

In addressing whether the award of fees was excessive, this Court considered those factors set forth by the Texas Supreme Court in *Arthur Anderson*. *Thomas v. Bobby D. Assocs.*, 2008 LEXIS 5881 at \*4-5. More specifically, this Court noted the following:

a. The trial lasted little more than a day. *Id.* at \*10-11.

b. The issues involved were not complex. *Id.*at \*11.

c. Bobby D. Associates sought in excess of $80,000.00, but recovered only $7,030.00. *Id.*

d. There was no evidence that plaintiff's attorneys were precluded from other employment because of their representation of plaintiff. *Id.*

e. The record did not show numerous trial settings, multiple depositions or any indication of a treacherous procedural history. *Id.*

f. Although the litigation lasted for seven years, there were periods when the case lay dormant for years. *Id.*

g. Multiple lawyers worked on the case. *Id.*

Considering the above, this Court found the attorney's fees to be excessive in the amount of $24,000.00. *Thomas v. Bobby D. Assocs.*, 2008 LEXIS 5881 at \*13.

Comparing the present case to *Thomas*, it is clear that the fees awarded by the trial court are similarly excessive and should be reduced.

| *Thomas v. Bobby D. Assocs.,* **2008 LEXIS 5881 (Tex. App.–Tyler 2008, no pet)** | *EXCO Operating Co., LP v. McGee* |
|---|---|
| Trial lasted little more than a day. *Id* . at *11 | Trial lasted little more than a day. *Supra,* P. 20. |
| The issues involved were not complex. *Id* . at *11 | The issues involved were not complex, involving a single breach of contract claim. *Supra*, P. 20 |
| Bobby D. Associates sought in excess of $80,000.00, but recovered only $7,030.00. *Id.* at *11 | McGee sought in excess of $90,000.00 prior to trial and $34,156.25 at trial, but recovered only $4,108.25. *Supra*, P. 20 |
| There was no evidence that plaintiff's attorneys were precluded from other employment because of their representation of plaintiff. *Id.* at *11 | There is no evidence that McGee's attorneys were precluded from other employment because of their representation of McGee. *Supra*, pp. 20-21 |
| The record did not show numerous trial settings, multiple depositions or any indication of a treacherous procedural history. | There was a very limited procedural history. There were no pretrial hearings and limited discovery. *Supra*, pp. 20-21 |
| Although the litigation lasted for seven years, there were periods when the case lay dormant for years. *Id.* at *11 | Lasted over four and a half years, but it lay dormant for long periods of time. *Supra*, P. 22 |

### 7. A 10-1 ratio of attorney's fees to damages is almost always excessive.

The amount of fees awarded ($39,773.75) is almost ten times the amount of

damages awarded ($4,108.25). Although the ratio of attorney's fees to damages is

not necessarily dispositive as to whether the fees are reasonable and necessary,

24

Appellant is aware of only one other Texas case in which a higher ratio was awarded and upheld by an appellate court.[6] Conversely, there are multiple examples of Texas cases in which *lower* fee-to-damages ratios have been deemed to be excessive. For example, in the *Thomas* case, *supra*, this Court found a seven-to-one ratio to be excessive. In *Smith v. Patrick W. Y. Tam Trust*, 296 S.W.3d 545, 548 (Tex. 2009) the Texas Supreme Court found a fee award of 72.98% of the damages recovered to be unreasonable. In *Musgrave v. Brookhaven Lake Prop. Owners Ass'n*, 990 S.W.2d 386, 402 (Tex. App.–Texarkana 1999, pet. denied), a one-to-one ratio of fees to damages was deemed to be excessive and ultimately reduced on appeal. Thus, although there is no set ratio that is deemed excessive for all cases, a ten-to-one ratio is almost unheard of in Texas.

## C. <u>Remittitur</u>

In the event attorney's fees are not entirely barred, EXCO alternatively requests that this Court reduce by remittitur the amount of attorney's fees awarded. EXCO proposes a reduction of $35,665.50, which would result in an award of attorney's fees of $4,108.25, being the same amount of actual damages awarded to Plaintiff at trial.

---

[6] In *USAA Cty. Mut. Ins. Co. v. Cook*, 241 S.W.3d 93, 102-03 (Tex. App.–Houston 2007, no pet.) the appellate court affirmed a $53,310 fee award in a dispute over an insurance claim worth approximately $2,000. However, the court noted that most of the hours billed by the recovering party were spent responding to motions filed by the opposing party that ultimately were denied.

## V.  **PRAYER**

Appellant EXCO Operating Company, LP, respectfully prays that this Court reverse the trial court's judgment as to the award of attorney's fees and render judgment in its favor that McGee recover no attorney's fees due to her excessive demands. Alternatively, EXCO prays that the Court suggest a reduction by remittitur to the amount of attorney's fees awarded and, in the event the remittitur is not timely filed, that the portion of the judgment awarding attorney's fees be severed and reversed and remanded for a new trial.

Respectfully submitted,

WILSON, ROBERTSON & CORNELIUS, P.C.
One American Center
909 ESE Loop 323, Suite 400 [01]
P.O. Box 7339
Tyler, Texas 75711-7339
Telephone:  903/509-5000
Telecopier:  903/509-5091


By: _/s/ Matthew T. Milam_
JENNIFER PARKER AINSWORTH
State Bar No. 00784720
E-mail: jainsworth@wilsonlawfirm.com
MATTHEW T. MILAM
State Bar No. 24065746
E-mail: mmilam@wilsonlawfirm.com

**ATTORNEYS FOR APPELLANT
EXCO OPERATING COMPANY, LP**

26

## CERTIFICATE OF SERVICE

I hereby certify that pursuant to Rule 9.5, Texas Rules of Appellate Procedure, that a true and correct copy of the foregoing pleading was served upon the following counsel electronically, through the electronic filing manager, and via certified mail, return receipt requested, on this the 8th day of June, 2015:

John D. Sloan, Jr., E-mail: jsloan@sloanlaw.com
J. Ryan Fowler, E-mail: rfowler@sloanfirm.com
[Attorneys for Appellee Mary K. McGee]
SLOAN, BAGLEY, HATCHER & PERRY LAW FIRM
101 East Whaley Street
P.O. Drawer 2909
Longview, Texas 75606

*/s/ Matthew T. Milam*
MATTHEW T. MILAM

## <u>CERTIFICATE OF COMPLIANCE</u>

I, MATTHEW T. MILAM, attorney for Appellant EXCO Operating Company, LP, hereby certify, pursuant to Texas Rule of Appellate Procedure 9.4(i)(3), that there are 5,834 words in the foregoing Appellant's Brief. I am making this certification based upon reliance on the word count of the computer program used to create Appellant's Brief.

*/s/ Matthew T. Milam*
MATTHEW T. MILAM

# TABLE OF CONTENTS TO APPELLANT'S APPENDIX

| Description | Tab |
|---|---|
| Final Judgment dated January 7, 2015. | 1 |
| Findings of Fact and Conclusions of Law, dated June 6, 2014 | 2 |
| Jury Charge and Verdict | 3 |
| The Lease | 4 |
| Demand letter from McGee's counsel to EXCO's counsel dated January 23, 2012. | 5 |
| Demand letter from McGee's counsel to EXCO's counsel dated April 10, 2013. | 6 |

**APPENDIX TAB 1**

CAUSE NO. 369-09

| | | |
|---|---|---|
| MARY K. MCGEE | § | IN THE DISTRICT COURT |
| | § | |
| VS. | § | 115TH JUDICIAL DISTRICT |
| | § | |
| EXCO OPERATING COMPANY, LP | § | UPSHUR COUNTY, TEXAS |

## FINAL JUDGMENT

A trial in this cause was held beginning on February 13, 2014 and ending on February 14, 2014. Mary K. McGee, Plaintiff herein, appeared and announced ready for trial. EXCO Operating Company, Defendant herein, appeared and announced ready for trial.

A jury was duly accepted, impaneled, and sworn. This case was partially submitted to a jury on the questions of: 1) whether EXCO failed to comply with that Oil, Gas and Mineral Lease executed on February 21, 1996 by and between Curtis Webb and wife Mary K. McGee Webb and Amoco Production Company; and, 2) if EXCO did fail to comply with the Lease, the sum of money that would fairly and reasonably compensate Plaintiff for her damages, if any, that resulted from such failure to comply with the lease. The jury returned its verdict after hearing the evidence, argument, and the Court's instructions, and after receiving any special instructions and issues. The jury found that EXCO did not comply with the lease, that Plaintiff was entitled to $4,108.25 for timber costs, and that Plaintiff was not entitled to any loss of property value damages.

The remainder of the case was submitted to the Court for determination, consisting of the questions of whether: 1) Whether Plaintiff acted unreasonably in demanding or requesting payment from EXCO Operating Company, L.P.; and 2) the amount of a reasonable fee, if any, for the services of Plaintiff's attorneys. The Court, having considered the pleadings and evidence submitted, found that Plaintiff did not act unreasonably in demanding or requesting

DOCUMENT
SCANNED

261

payment from EXCO, and that the amount of a reasonable fee for the necessary services of Plaintiff's attorneys was $39,773.75.

Based on the jury's verdict and the Court's findings it is ORDERED, ADJUDGED, AND DECREED that Mary K. McGee, Plaintiff, recover from EXCO Operating Company, L.P., Defendant, judgment for:

1. $4,108.25 as compensation for damages to trees;

2. $39,773.75 as reasonable and necessary attorney's fees;

3. Costs of court in the sum of $1,381.16; and

4. Prejudgment interest on such damages at the rate of 5% per annum, in the sum of $1,137.30.

5. Postjudgment interest on the total sum at the annual rate of 5%.

This Judgment finally disposes of all parties' claims and is appealable.

SIGNED on the __7__ day of _January_, 2015.

_____
JUDGE PRESIDING

APPROVED AS TO FORM ONLY:

J. RYAN FOWLER, Attorney for Plaintiff

MATTHEW T. MILAM, Attorney for Defendant

262

**APPENDIX TAB 2**

CAUSE NO. 369-09

MARY K. McGEE

VS.

TXOK TEXAS ENERGY
RESOURCES, LP., ET AL

IN THE DISTRICT COURT

UPSHUR COUNTY, TEXAS

115TH JUDICIAL DISTRICT

On this the 6th day of June, 2014 came on the Court and entered the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

1. Plaintiff Mary K. McGee ("Plaintiff") owns approximately 93.9 acres (the "Property") in Upshur County, Texas.

2. Plaintiff Mary K. McGee entered into a contract (oil, gas and mineral lease) with Defendants TXOK Texas Energy Resources, LP., TXOK Texas Energy Holdings, LLC., and EXCO Operating Company,LP. dated February 21, 1996.

3. In late 2006 and early 2007 EXCO drilled a gas well (the "Well") and constructed a roadway and pipeline on the Property.

4. Plaintiff Mary K. McGee was owed compensation for timber and property damage pursuant to the binding contract.

5. Defendants failed to comply with the contract.

6. By the letter admitted into evidence as Defendant's Exhibit 6, on or about March 31, 2006, EXCO offered to pay to Plaintiff $16,518.25 to settle all claims for damages to the Property related to the drilling of the Well and construction of the roadway and pipeline. Plaintiff did not accept such offer.

7. Plaintiff was forced to hire legal counsel to seek reimbursement pursuant to the contract entered by the parties.

8. Plaintiff filed her Original Petition on June 24, 2009, claiming EXCO breached the Lease by failing to pay for damages to the Property related to the drilling of the Well and the construction of the roadway and pipeline.

DOCUMENT SCANNED

252

9. By the letter admitted into evidence as Defendant's Exhibit 3, on or about January 23, 2012, Plaintiff demanded payment of $90,000.00 from EXCO to settle all matters in this cause.

10. By the letter admitted into evidence as Defendant's Exhibit 4, on or about April 10, 2012, Plaintiff again demanded payment of $90,000.00 from EXCO to settle all matters in this cause.

11. On February 10, 2014, Plaintiff and Defendants entered into a Rule 11 Agreement agreeing to allow the issue of attorneys' fees to be determined by the court post verdict.

12. This cause was partially tried to a jury beginning on February 13, 2014 as to the issues of whether EXCO breached the Lease and the damages caused by any breach, excluding attorneys' fees.

13. On February 14, 2014, the jury returned a verdict that EXCO breached the Lease and awarded Plaintiff damages in the amount of $4,108.25.

14. The issues of attorneys' fees and whether Plaintiff's demands on EXCO were excessive were submitted to the Court.

15. On February 18, 2014, Plaintiff submitted affidavits on attorney's fees to the court pursuant to Rule 11 Agreement.

16. Plaintiff requested attorneys' fees in the total amount of $39,773.75.

17. On February 20, 2014, Defendants filed a response to Plaintiff's request for attorneys' fees alleging Plaintiff was not entitled to fees due to excessive demands and unreasonable and unnecessary fees.

18. On March 5, 2014, Plaintiff filed a reply to Defendant's response to attorneys' fees arguing Defendants' claims of excessive demands and unreasonable and unnecessary fees.

19. Plaintiff's demands to EXCO for payment of $90,000.00 were not unreasonable. Plaintiff did not act unreasonably or in bad faith in their initial demand of $90,000.00 to settle the case.

20. Plaintiff's requested attorneys' fees of $39,773.75 were not unreasonable or unnecessary.

21. To the extent any of the foregoing findings of fact are more properly deemed conclusions of law; they are hereby adopted as such.

Page 3

## CONCLUSIONS OF LAW

1. The Court has jurisdiction over this proceeding, and venue is proper in this Court.

2. In breaching the contract with Plaintiff, Defendants caused injury to Plaintiff.

3. Defendants had a duty to comply with terms of the contract.

4. Because of Defendants' failure to comply with the terms of the contract, Plaintiff was forced to retain legal counsel to obtain compensation.

5. By statute Plaintiff is entitled to recovery of attorneys' fees.

6. Plaintiff's recovery of attorneys' fees is not barred due to an excessive demand. Plaintiff's demands to EXCO for payment of $90,000 to settle all matters in this cause were not unreasonable, and therefore not excessive.

7. Plaintiff is entitled to recover her reasonable attorneys' fees of $39,773.75 pursuant to TEX. CIV. PRAC. & REM. CODE § 38.001(8).

8. The amount sought by Plaintiff was an amount that was reasonable and necessary.

9. Defendants failed to carry the burden on their affirmative defense of excessive demand.

10. Plaintiff did not act unreasonably or in bad faith in their initial demand of $90,000.00 to settle the case.

11. Plaintiff's requested attorney fees of $39,773.75 were not unreasonable or unnecessary.

12. To the extent any of the foregoing are more properly deemed findings of fact, they are hereby adopted as such.

SIGNED on this the 6th day of June, 2014.

_____
JUDGE LAUREN PARISH
115th Judicial District Court

254

**APPENDIX TAB 3**

CAUSE NO. 369-09

| MARY K. MCGEE | § | IN THE DISTRICT COURT |
| | § | |
| VS. | § | 115TH JUDICIAL DISTRICT |
| | § | |
| EXCO OPERATING COMPANY, LP | § | UPSHUR COUNTY, TEXAS |

## JURY CHARGE

MEMBERS OF THE JURY:

After the closing arguments, you will go to the jury room to decide the case, answer the questions that are attached, and reach a verdict. You may discuss the case with other jurors only when you are all together in the jury room.

Remember my previous instructions: Do not discuss the case with anyone else, either in person or by any other means. Do not do any independent investigation about the case or conduct any research. Do not look up any words in dictionaries or on the Internet. Do not post information about the case on the Internet. Do not share any special knowledge or experiences with the other jurors. Do not use your phone or any other electronic device during your deliberations for any reason.

Any notes you have taken are for your own personal use. You may take your notes back into the jury room and consult them during deliberations, but do not show or read your notes to your fellow jurors during your deliberations. Your notes are not evidence. Each of you should rely on your independent recollection of the evidence and not be influenced by the fact that another juror has or has not taken notes.

You must leave your notes with the bailiff when you are not deliberating. The bailiff will give your notes to me promptly after collecting them from you. I will make sure your notes are kept in a safe, secure location and not disclosed to anyone. After you complete your deliberations, the bailiff will collect your notes. When you are released from jury duty, the bailiff will promptly destroy your notes so that nobody can read what you wrote.

Here are the instructions for answering the questions.

1. Do not let bias, prejudice, or sympathy play any part in your decision.

2. Base your answers only on the evidence admitted in court and on the law that is in these instructions and questions. Do not consider or discuss any evidence that was not admitted in the courtroom.

3. You are to make up your own minds about the facts. You are the sole judges

CHARGE OF THE COURT

DOCUMENT SCANNED

of the credibility of the witnesses and the weight to give their testimony. But on matters of law, you must follow all of my instructions.

4. If my instructions use a word in a way that is different from its ordinary meaning, use the meaning I give you, which will be a proper legal definition.

5. All the questions and answers are important. No one should say that any question or answer is not important.

6. Answer "yes" or "no" to all questions unless you are told otherwise. A "yes" answer must be based on a preponderance of the evidence unless you are told otherwise. Whenever a question requires an answer other than "yes" or "no," your answer must be based on a preponderance of the evidence unless you are told otherwise.

The term "preponderance of the evidence" means the greater weight of credible evidence presented in this case. If you do not find that a preponderance of the evidence supports a "yes" answer, then answer "no." A preponderance of the evidence is not measured by the number of witnesses or by the number of documents admitted in evidence. For a fact to be proved by a preponderance of the evidence, you must find that the fact is more likely true than not true.

7. Do not decide who you think should win before you answer the questions and then just answer the questions to match your decision. Answer each question carefully without considering who will win. Do not discuss or consider the effect your answers will have.

8. Do not answer questions by drawing straws or by any method of chance.

9. Some questions might ask you for a dollar amount. Do not agree in advance to decide on a dollar amount by adding up each juror's amount and then figuring the average.

10. Do not trade your answers. For example, do not say, "I will answer this question your way if you answer another question my way."

11. Unless otherwise instructed, the answers to the questions must be based on the decision of at least ten of the twelve jurors. The same ten jurors must agree on every answer. Do not agree to be bound by a vote of anything less than ten jurors, even if it would be a majority.

As I have said before, if you do not follow these instructions, you will be guilty of juror misconduct, and I might have to order a new trial and start this process over again. This would waste your time and the parties' money, and would require the taxpayers of this county to pay for another trial. If a juror breaks any of these rules, tell that person to stop and report it to me immediately.

## DEFINITIONS AND INSTRUCTIONS

1. The "Lease" refers to the Oil, Gas and Mineral Lease executed on February 21, 1996 by and between Curtis Webb and wife Mary K. McGee Webb and Amoco Production Company.

2. The "Property" refers to that certain tract or parcel of land, being 93.9 acres of land, more or less, a part of the David Meredith Survey, A-315, and being the same land described in that Warranty Deed dated 4-8-1993 from Henry P. Bishop and wife Joyce Bishop to Curtis Webb and wife Mary K. McGee Webb and recorded in Deed of Records Vol. 129, Page 389, Upshur County, Texas.

## QUESTION NO. 1

Did EXCO Operating Company, LP fail to comply with the Lease?

Answer "Yes" or "No"

Answer: ~~~~ Yes

INSTRUCTION:

If your answer to Question 1 is "Yes," then answer Question 2. Otherwise, do not answer Question 2.

## QUESTION NO. 2:

What sum of money, if paid now in cash, would fairly and reasonably compensate, MARY K. MCGEE for her damages, if any, that resulted from such failure to comply?

In answering questions about damages, answer each question separately. Do not increase or reduce the amount in one answer because of your answer to any other question about damages. Do not speculate about what any party's ultimate recovery may or may not be. Any recovery will be determined by the court when it applies the law to your answers at the time of judgment.

Consider the elements of damages listed below and none other. Consider each element separately. Do not include damages for one element in any other element. Do not include interest on any amount of damages you find.

Loss of property value, if any, is the difference between the actual cash market value of Mary McGee's property immediately before and immediately after the drilling of the well.

Answer separately, in dollars and cents, for damages, if any.

a.     Timber costs.

Answer: $ 4108.25

b.     Loss of property value.

Answer: $0.00

## Presiding Juror:

1.      When you go into the jury room to answer the questions, the first thing you will need to do is choose a presiding juror.

2.      The presiding juror has these duties:

      a.      have the complete charge read aloud if it will be helpful to your deliberations;

      b.      preside over your deliberations, meaning manage the discussions, and see that you follow these instructions;

      c.      give written questions or comments to the bailiff who will give them to the judge;

      d.      write down the answers you agree on;

      e.      get the signatures for the verdict certificate; and

      f.      notify the bailiff that you have reached a verdict.

Do you understand the duties of the presiding juror? If you do not, please tell me now.

211

## Instructions for Signing the Verdict Certificate:

1.     Unless otherwise instructed, you may answer the questions on a vote of ten jurors. The same ten jurors must agree on every answer in the charge. This means you may not have one group of ten jurors agree on one answer and a different group of ten jurors agree on another answer.

2.     If ten jurors agree on every answer, those ten jurors sign the verdict.

If eleven jurors agree on every answer, those eleven jurors sign the verdict.

If all twelve of you agree on every answer, you are unanimous and only the presiding juror signs the verdict.

3.     All jurors should deliberate on every question. You may end up with all twelve of you agreeing on some answers, while only ten or eleven of you agree on other answers. But when you sign the verdict, only those ten who agree on every answer will sign the verdict.

Do you understand these instructions? If you do not, please tell me now.

_____
JUDGE PRESIDING

FILED
In the District Court of
Upshur County, Texas
on this the 14th day of February 2014
at _____ o'clock ____ M
Carolyn Parrott, District Clerk
_____ Deputy

## Verdict Certificate

Check one:

___✓___ Our verdict is unanimous. All twelve of us have agreed to each and every answer. The presiding juror has signed the certificate for all twelve of us.

_____          _Michael D. Martin_
Signature of Presiding Juror          Printed Name of Presiding Juror

_____ Our verdict is not unanimous. Eleven of us have agreed to each and every answer and have signed the certificate below.

_____ Our verdict is not unanimous. Ten of us have agreed to each and every answer and have signed the certificate below.

Signature                                        Name Printed

1. _____          _____

2. _____          _____

3. _____          _____

4. _____          _____

5. _____          _____

6. _____          _____

7. _____          _____

8. _____          _____

9. _____          _____

10. _____          _____

11. _____          _____

CHARGE OF THE COURT                                        Page 8  213

**APPENDIX TAB 4**

## Oil, Gas and Mineral Lease   005550

THIS AGREEMENT, made this __21st__ day of __February__, 19__96__, between

__CURTIS WEBB and wife MARY K. McGEE WEBB__

__Whose address is: 1905 Warwick Circle West, Longview, TX 75601__

Lessor (whether one or more), and __Amoco Production Company, P.O.Box 3092, Houston, TX 77253__, Lessee,

WITNESSETH:

1. Lessor, in consideration of __Ten and No/100 ------------__ Dollars (s __10.00 & OVC__), in hand paid, of the royalties herein provided, and of the agreements of Lessee herein contained, hereby grants, leases and lets exclusively unto Lessee for the purposes of (a) exploring, prospecting, drilling and mining thereof for the producing therefrom, and from lands operated therewith, oil, gas and all other minerals, (b) saving, treating, transporting and caring for said products, (c) removing therefrom, and from lands operated therewith, water, brine and other refuse, and injecting the same, gas, and any other substances into the subsurface thereof, (d) exercising all rights and privileges hereinafter granted to Lessee, and (e) constructing, operating and maintaining thereon all structures and facilities necessary or convenient for any and all said purposes, together with the reversionary rights of Lessor, the following described land in __Upshur__ County, Texas, to-wit:

> 93.9 acres of land, more or less, a part of the David
> Meredith Survey, A-315, and being the same land described in
> that Warranty Deed dated 4-8-1993 from Henry P. Bishop and
> wife Joyce Bishop to Curtis Webb and wife Mary K. McGee Webb
> and recorded in Vol. 129, Pg 389 of the Official Records of
> Upshur County, Texas.
>
> It is hereby agreed that the figure one-eighth (1/8) in each
> place it appears in paragraph three (3) of the printed form
> of this lease as it applies to royalty on oil and gas is
> hereby changed to read three-sixteenths (3/16).
>
> See Exhibit "A" Attached Hereto and Made A Part Hereof.

This lease covers all of the land described above, and, in addition thereto there is hereby leased, let and demised to the same extent as if it were described herein specifically, whether the same be in said survey or in adjacent surveys, all land owned or claimed by Lessor adjacent or contiguous to the land herein above particularly described. For the purpose of calculating the payments hereinafter provided for, said land (called "leased premises") is estimated to comprise __93.9__ acres, whether it actually comprises more or less.

2. Subject to the other provisions herein contained, this lease shall be for a term of __THREE__ years from this date (called "primary term") and as long thereafter as oil, gas or other mineral is produced from the leased premises or this lease is continued in force by any other provisions hereof.

3. The royalties to be paid by Lessee are: (a) on oil (exclusive of casinghead gas and all substances contained therein), one-eighth of that produced and saved from the leased premises, the same to be delivered at the well or to the credit of Lessor into the pipeline to which the well may be connected, or Lessee may from time to time purchase such royalty oil and pay Lessor the market price therefor at the well prevailing for the field where produced on the date of purchase; (b) on gas in its natural state or otherwise (including condensate), casinghead gas and all other gaseous substances, and all substances contained therein or produced therewith, produced from the leased premises and used off the premises, or used for the extraction of gasoline or other products therefrom, one-eighth of the market value thereof at the well, and, when sold, the same fractional part of the net amount realized by Lessee from the sale thereof, if at any time and from time to time, after the primary term of this lease, there is a well on the leased premises or on acreage with which the leased premises or a portion thereof are pooled or unitized, capable of producing oil or gas or both in paying quantities, but which is shut-in for any reason whatsoever before or after production therefrom, this lease shall be extended for a period of 90 days from the date on which (1) said well is shut-in, or (2) all of any part of the leased premises is included in a pooled unit created under the pooling clause hereof or in a unit consisting of interests contributed to a unitized area on which a shut-in well is located, or (3) this lease ceases to be maintained under some other provision hereof, whichever is the later date, and if on or before the expiration of such 90 day period, Lessee pays or tenders to Lessor, or to the credit of Lessor at the depository bank hereinafter designated, a sum (called "shut-in rental") in the amount of ONE HUNDRED DOLLARS ($100) per well that is shut-in, and said payment shall continue this lease in force and effect for one year from the commencement of said 90 day period, even though there may be some actual production during such one year period. Upon like payments or tenders annually, on or before the expiration of the last preceding year for which such payment or tender was made, this lease shall continue in force and effect for successive one year periods, as to the lands covered by and included in the lease at the time respective payments or tenders are made. Payments or tender of a shut-in rental may be made in currency, draft, check or by electronic funds transfer, at the option of Lessee; and the deposit of such currency, draft or check properly addressed to the Lessor or said bank, in any post office, or the electronic transfer of such funds to said bank shall be deemed payment as herein provided. If such payments are so made or tendered, it shall be considered for all purposes that oil and/or gas is being produced in paying quantities from the leased premises. Notwithstanding any other provision to the contrary herein, this lease shall not terminate because of a failure properly or timely to pay or tender a shut-in rental unless Lessor shall have given Lessee written notice of such failure properly or timely to pay or tender a shut-in rental and Lessee thereafter shall have failed for a period of 60 days after receipt of such notice to pay or tender such payment in the proper amount together with liquidated damages for a late or improper payment in the amount of One Hundred ($100.00) Dollars. Lessee may make such payment or tender to Lessor or may deposit same to the credit of Lessor in the __Direct to Lessor__, Bank at __Address Above__ or its successors, which shall continue as the depository, regardless of changes in the ownership of said land. The payment of rental herein referred to may be made in currency, draft, check, or by electronic funds transfer at the option of the Lessee; and the deposit of such currency, draft or check, properly addressed to the Lessor or said bank, in any post office, or the electronic transfer of said funds to said bank on or before the rental payment date, shall be deemed payment as herein provided. If such bank (or any successor bank) ceases to do business or refuses to accept such payments or tenders, Lessee shall not be in default for failure to make or tender the same until 30 days after Lessor shall deliver to Lessee a proper recordable instrument naming another bank as agent to receive such payments or tenders, and (c) on all other minerals mined and marketed, one-tenth either in kind or value at the well or mine, at Lessee's election, except that on sulphur mined and marketed, the royalty shall be One Dollar ($1.00) per long ton. Lessee shall have free use of oil, gas, coal and water from said land, except water from Lessor's wells, for all operations hereunder, and the royalty on oil, gas and coal shall be computed after deducting any so used. If any contiguous portions of the leased premises are now or shall hereafter be owned in severalty or in separate tracts, the premises, nevertheless, shall be developed and operated as one lease, and all royalties accruing hereunder shall be treated as an entirety and shall be divided among and paid to such separate owners in the proportion that the acreage owned by each such separate owner bears to the entire leased acreage.

4. Lessee is granted the right and power to pool all or any part of the leased premises with any other lands, as to any stratum or strata and as to any mineral or minerals, and as to all or any interests therein, and by whomsoever owned, for development and operation of the same as a unit or units. Said right and power, and any and all other rights and powers hereunder, may be exercised at any time and from time to time while this lease is in force under any provisions hereof, either during or after the primary term and regardless of the status of the operations on or the development of any land included therein. Units pooled primarily for oil shall not substantially exceed 320 acres each in area, and units pooled primarily for gas shall not substantially exceed 640 acres each in area, each plus a tolerance of 10% thereof; provided that, should governmental authority having jurisdiction prescribe or permit the creation of larger units for maximum allowable production, any unit created hereunder may conform substantially in size with those so prescribed or permitted. No unit created hereunder need conform in area with any other unit. Any unit may be enlarged to include additional acreage to the extent of the maximum herein specified (including the specified acreage tolerance) or extended to include any other stratum or strata or mineral or minerals or may wholly or partially be dissolved and, if partially dissolved, the undissolved portion thereof may be enlarged to the aforesaid extent. Lessee shall file for record in the appropriate records of the county in which the leased premises are situated an instrument describing the lands included in any unit created hereunder and any extension, enlargement or dissolution thereof in whole or in part, and the stratum or strata and minerals or minerals effected thereby; and all such instruments shall be effective as of the date of filing thereof of record, unless otherwise specified therein, as to Lessor and Lessee and all other parties whose mineral or royalty interests are committed hereto, notwithstanding that the creation, extension, enlargement or dissolution in whole or in part of the unit may not be effective as to all parties owning surface, leasehold, mineral, royalty or other interests in the lands affected thereby. The entire acreage included in any unit shall be considered for all purposes (except for payment of royalties and shut-in rentals) as if it were the leased premises; and, regardless of the actual location thereof on any unit created hereunder, any operations or shut-in well or production on such unit (or the undissolved part thereof) shall be considered as on the portion of the leased premises (whether all or part) which is included in such unit (or the undissolved part thereof) under the provisions of this lease. As to each unit created hereunder, there shall be allocated to the portion of the leased premises (whether all or part) included in such unit such portion of the total production from such unit as the number of surface acres of the leased premises included in such unit (as such unit from time to time may be constituted) bears to the total number of surface acres comprising such unit; and the royalties on production from such unit shall be computed only on that portion of the production so allocated to said portion of the leased premises. If any unit which includes all or any portion of the leased premises is created by order or orders of the Railroad Commission of Texas or other lawful authority, then such unit shall be considered that such unit was duly and validly created under the provisions hereof and, except to the extent, if any, that any provision hereof conflicts with any such order or orders, the provisions hereof shall be applicable to such unit and, in the event of any such conflict, the provisions hereof shall be deemed to have been amended to conform with such order or orders.

5. This is a PAID-UP LEASE. In consideration of the cash payment made herewith, Lessor agrees that Lessee shall not be obligated, except as otherwise provided herein, to commence or continue any operations during the primary term. Lessee may at any time or times surrender this lease as to all or any portion or portions of said land by delivering to Lessor or by filing for record a release or releases, and be relieved of all obligation thereafter accruing as to the acreage surrendered.

6. If prior to discovery and production of oil, gas or other mineral on the leased premises or on acreage pooled therewith, Lessee should drill a dry hole or holes thereon or, if after discovery and production of oil, gas or other mineral the production thereof should cease from any cause, this lease shall not terminate if Lessee commences operations for drilling or reworking within 60 days thereafter. If at the expiration of the primary term, oil, gas or other mineral is not being produced on the leased premises or on acreage pooled therewith, but Lessee is then engaged in drilling or reworking operations thereon or shall have completed a dry hole thereon within 60 days prior to the end of the primary term, the lease shall remain in force so long as operations on said well or for drilling or reworking of any additional well are prosecuted with no cessation of more than 60 consecutive days and, if they result in the production of oil, gas or other mineral, so long thereafter as oil, gas or other mineral is produced from the leased premises, or on acreage pooled therewith. In the event a well or wells producing oil or gas in paying quantities should be brought in on adjacent land and within 330 feet of and draining the leased premises, Lessee agrees to drill such offset wells as a reasonably prudent operator would drill under the same or similar circumstances.

7. Lessee shall have the right at any time during or after the expiration of this lease to remove all property and fixtures placed by Lessee on the leased premises, including the right to draw and remove all casing. No well shall be drilled within 200 feet of any residence or barn now on said land without Lessor's consent.

Form 2215  Apr-88  (Producers 88 Rev.)
3 Ten Year Paid-Up Lease; With
Pooling Provision; Texas Only)

PLAINTIFF'S EXHIBIT 1

MCGEE

8. The rights of either party hereunder may be assigned in whole or in part, but no change or division in ownership of the leased premises, shut-in rentals, or royalties or in the status of any party, however accomplished, shall operate to enlarge the obligations or diminish the rights of Lessee. No change in such ownership or state shall be binding on Lessee until 30 days after Lessee shall have been furnished by registered U.S. mail at Lessee's principal place of business with a certified copy of recorded instrument or instruments evidencing same. In the event of assignment hereof in whole or in part, liability for breach of any obligation hereunder shall rest exclusively upon the owner of this lease or of a portion thereof who commits such breach. In the event of the death of any person entitled to any sum hereunder, Lessee may pay or tender the same to the credit of the deceased or the estate of the deceased until such time as Lessee is furnished with proper evidence of the appointment and qualification of an executor or administrator of the estate or, if there be none, evidence satisfactory to it as to the heirs or devisees of the deceased and that all debts of the estate have been paid. If at any time two or more parties are entitled to any sum payable hereunder, or any part thereof, Lessee may pay or tender the same either jointly to such parties or separately to or to each in accordance with his respective ownership thereof. In event of assignment of this lease as to a segregated portion of the leased premises, the shut-in rentals payable hereunder shall be apportionable as between the several leasehold estates ratably according to the surface area of each, and the failure to pay shut-in rentals on one segregated portion of the leased premises shall not affect the rights hereunder of the party holding the other segregated portion hereunder. If six or more parties become entitled to royalty hereunder, Lessee may withhold payment thereof unless and until furnished with a recordable instrument executed by all such parties designating an agent to receive payment for all.

9. The breach by Lessee of any obligation arising hereunder shall not work a forfeiture or termination of this lease nor cause a termination or reversion of the estate created hereby nor be grounds for cancellation hereof in whole or in part. In the event Lessor considers that operations are not at any time being conducted in compliance with this Lease, Lessor shall notify Lessee in writing of the facts relied upon as constituting a breach hereof and Lessee, if in default, shall have 60 days after receipt of such notice in which to commence the compliance with the obligations imposed by virtue of this instrument. After the discovery of oil, gas or other mineral in paying quantities on the leased premises, Lessee shall develop the acreage retained hereunder as a reasonably prudent operator, but in discharging this obligation it shall in no event be required to drill more than one well per 220 acres of the area retained hereunder and capable of producing oil in paying quantities and more than one well per 640 acres of the area retained hereunder and capable of producing gas or other mineral in paying quantities, plus in each case a tolerance of 10% of the stated area.

10. Lessor hereby warrants and agrees to defend the title to the leased premises. Lessee at its option may discharge any tax, mortgage or other lien upon said land, either in whole or in part, and, in event Lessee does so, it shall be subrogated to such lien with right to enforce same and apply royalties toward satisfying same. Without impairment of Lessee's rights under the warranty in event of failure of title, it is agreed that if Lessor owns an interest in the oil, gas or other minerals on, in or under any part of the leased premises less than the entire fee simple estate therefor Lessor's interest herein specified or not and whether or not this lease purports to cover a whole or a fractional interest, then the royalties and shut-in rentals to be paid Lessor shall be reduced in the proportion that his interest bears to the whole and undivided fee and in accordance with the nature of the estate of which Lessor is seized.

11. Should Lessee be prevented from complying with any express or implied covenant of this lease, from conducting, drilling or reworking operations thereon or from producing oil or gas therefrom by reason of scarcity of or inability to obtain or access to equipment or material, or by operation of force majeure, any federal or state law or any order, rule order, rule or regulation of governmental authority, then while so prevented, Lessee's obligations hereunder shall be suspended and Lessee shall not be liable in damages for failure to comply therewith and this lease shall be extended while and so long as Lessee is prevented by any such cause from conducting drilling or reworking operations on or from producing oil or gas from the leased premises, and the time while Lessee is so prevented shall not be counted against Lessee, anything in this lease to the contrary notwithstanding.

12. In the event that Lessor, during the primary term of this lease, receives a bona fide offer which Lessor is willing to accept from any party offering to purchase from Lessor a lease covering any or all of the substances covered by this lease and covering all or a portion of the land described herein, with the lease becoming effective upon expiration of this lease, Lessor hereby agrees to notify Lessee in writing of said offer immediately, including in the notice the name and address of the offeror, the price offered and all other pertinent terms and conditions of the offer. Lessee, for a period of fifteen days after the receipt of the notice, shall have the prior and preferred right and option to purchase the lease or part thereof covered thereby, covered by the offer at the price and according to the terms and conditions specified in the offer. All offers made up to and including the last day of the primary term of this lease shall be subject to the terms and conditions of this Section. Should Lessee elect to purchase the lease pursuant to the terms hereof, it shall so notify Lessor in writing by mail or telegram prior to expiration of said 15-day period. Lessee shall promptly thereafter furnish to Lessor the new lease for execution on behalf of Lessor(s) along with Lessee's sight draft payable to Lessor in payment of the specified amount as consideration for the new lease, such draft being subject only to approval of title according to the terms thereof. Upon receipt thereof, Lessor(s) shall promptly execute said lease and return same along with the enclosed draft to Lessee's representative or through Lessee('s) bank of record for payment.

Should any one or more of the parties named herein as Lessor fail to execute this lease, it shall nevertheless be binding on the party or parties executing the same, and additional parties may execute this lease as Lessor, and this lease shall be binding on each party executing this lease notwithstanding that such party is not named herein as Lessor; and all of the provisions of this lease shall inure to the benefit of and be binding on the parties hereto and their respective heirs, legal representatives, successors and assigns, and successive successors and assigns.

IN WITNESS WHEREOF, this instrument is executed on the date first above written.

| Signature | Taxpayer Identification or Social Security Number |
|---|---|
| _Curtis Webb_ | |
| Curtis Webb | |
| _Mary K. McGee-Webb_ | 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 |
| Mary K. McGee Webb | |

STATE OF Texas

COUNTY OF Gregg

This instrument was acknowledged before me on this 11th day of July, 19 96 by Curtis Webb and Mary K. McGee Webb

JOHN LAVERTY
Notary Public State of Texas
Comm. Exp. 12-30-97

Printed Name of Notary _John Laverty_
John Laverty

My commission expires:

STATE OF _____

COUNTY OF _____

This instrument was acknowledged before me on this _____ day of _____, 19 _____ by _____

My commission expires: _____     Printed Name of Notary _____

STATE OF _____

COUNTY OF _____

This instrument was acknowledged before me on this _____ day of _____, 19 _____ by _____

My commission expires: _____     Printed Name of Notary _____

MCGEE25

EXHIBIT "A"

Attached to and made a part of the oil and gas lease dated February 21, 1996 between Curtis Webb and wife Mary K. McGee Webb, as Lessors, and Amoco Production Company, as Lessee.

13. It is agreed between Lessor and Lessee that only the Southeast 33.2 acres of the 93.9 acres herein described leased premises can be used for conducting surface drilling operations.

14. Lessee shall pay for all damages caused by its operations hereunder to houses, buildings, fences, walls, roads and other improvements, cattle and other livestock, growing crops, trees and grasses. As soon as is practicable after completion of drilling operations on the leased premises, the lessee shall fill in and cover up all slush pits and other excavations made in the course of its operations hereunder and shall clean up the drillsite and restore the surface of the ground to as near its formal condition as is practicable.

Signed For Identification

_Curtis Webb_
Curtis Webb

STATE OF TEXAS COUNTY OF UPSHUR
I hereby certify that the instrument was filed on the date and time stamped hereon by me and was duly recorded in the volume and page of the named records of Upshur County Texas as stamped hereon by me.

JUL 17 1996

REX A. SHAW
COUNTY CLERK
UPSHUR COUNTY TEXAS

FILED
REX A. SHAW
COUNTY CLERK
UPSHUR COUNTY, TX.
95 JUL 17 AM 9:31
BY _____ DEPUTY

MCGEE26

**APPENDIX TAB 5**



## SLOAN, BAGLEY,
## HATCHER & PERRY
### LAW FIRM

January 23, 2012

<u>VIA FACSIMILE: (903) 509-5092</u>

**JOHN D. SLOAN JR.**
Board Certified - Personal Injury'l Rial Law
Texas Board of Legal Specialization
Board Certified Civil Trial Advocate
National Board of Trial Advocacy

**LAUREEN F. BAGLEY**
Licensed in Texas,
Louisiana and Mississippi
Certified Mediator

**M. RAYMOND HATCHER**
Licensed in Texas

**GLENN A. PERRY**
Board Certified - Personal Injury'l Rial Law
Texas Board of Legal Specialization
Board Certified Civil Trial Advocate
National Board of Trial Advocacy
Fellow American College of Trial Lawyers

**J. RYAN FOWLER**
Licensed in Texas

**ALAN J. ROBERTSON**
Licensed in Texas

**CARSON R. RUNGE**
Licensed in Texas

**JUSTIN A. SMITH**
Licensed in Texas

**JEFF FULBRIGHT**
Investigator
TDI License 200000012710

Amy York
*Wilson, Robertson & Cornelius, P.C.*
P.O. Box 7339
Tyler, Texas 75711

Re:    *Mary McGee vs. TXOK Texas Energy Resources LP., et al;*
       Cause No. 369-09;
       115th Judicial District Court, Upshur County, Texas

Dear Ms. York:

     I am in receipt of your letter dated December 7, 2011 offering $18,518.25 to settle Plaintiff's claim. Plaintiff has instructed me to reject your offer. Plaintiff does not feel that $18,518.25 fully compensates her for her losses including but not limited to damages cause by destruction of grass, trees, land by pits and excavations dug, and change of drill location on land which Plaintiff intended to build upon.

     However, in a good faith effort to avoid the unnecessary time and expense associated with litigating this matter, my client has authorized me to offer to settle this matter for the immediate payment of $90,000.00. Please be advised that this counter-offer of settlement will remain open until 4:00 p.m. Tuesday, January 31, 2012. At the end of this period, the offer of settlement will be withdrawn. Should you desire any additional information or desire to discuss this matter, please feel free to contact me at anytime. Thank you for your prompt and professional attention to this matter.

                Sincerely yours,

                SLOAN, BAGLEY, HATCHER & PERRY LAW FIRM

                J. Ryan Fowler

JRF/nh

**EXHIBIT A**

**APPENDIX TAB 6**



## SLOAN, BAGLEY, HATCHER & PERRY
### LAW FIRM

April 10, 2013

### VIA FACSIMILE: (903) 509-5092

Matthew T. Milam
*Wilson, Robertson & Cornelius, P.C.*
P.O. Box 7339
Tyler, Texas 75711

JOHN D. SLOAN JR.
Board Certified - Personal Injury Trial Law
Texas Board of Legal Specialization
Board Certified Civil Trial Advocate
National Board of Trial Advocacy

LAURENN P. BAGLEY
Licensed in Texas,
Louisiana and Mississippi
Certified Mediator

M. RAYMOND HATCHER
Licensed in Texas

GLENN A. PERRY
Board Certified - Personal Injury Trial Law
Texas Board of Legal Specialization
Board Certified Civil Trial Advocate
National Board of Trial Advocacy
Fellow American College of Trial Lawyers

J. RYAN FOWLER
Licensed in Texas

ALAN J. ROBERTSON
Licensed in Texas

CARSON R. RUNGE
Licensed in Texas

JUSTIN A. SMITH
Licensed in Texas

JEFF FULBRIGHT
Investigator
TDI License #0400012710

Re:  *Mary McGee vs. TXOK Texas Energy Resources L.P., et al*;
Cause No. 369-09;
115th Judicial District Court, Upshur County, Texas

Dear Mr. Milam:

I am in receipt of your letter dated April 9, 2013 continuing to offer $18,518.25 to settle Plaintiff's claim as offered in the December 7, 2011 correspondence. Please know on January 12, 2013 responded to Defendant's offer. Plaintiff will therefore reiterate her original counter as she has instructed me to reject your offer. Plaintiff does not feel that $18,518.25 fully compensates her for her losses including but not limited to damages cause by destruction of grass, trees, land by pits and excavations dug, and change of drill location on land which Plaintiff intended to build upon.

However, in a good faith effort to avoid the unnecessary time and expense associated with litigating this matter, my client has authorized me to offer to settle this matter for the immediate payment of $90,000.00. Please be advised that this counter-offer of settlement will remain open until 4:00 p.m. Tuesday, April 30, 2013. At the end of this period, the offer of settlement will be withdrawn. Should you desire any additional information or desire to discuss this matter, please feel free to contact me at any time. Thank you for your prompt and professional attention to this matter.

Sincerely yours,

SLOAN, BAGLEY, HATCHER & PERRY LAW FIRM

J. Ryan Fowler

JRF/nb

Located at: 101 East Whaley Street, Longview, Texas 75601  |  Mailing address P.O. Drawer 2909, Longview, Texas 75606
Phone 903.757.7000  |  Fax 903.757.7574  |  www.sloanfirm.com



EXHIBIT
B

24